24 A.3d 88

Coralie KURSTIN

v.

BROMBERG ROSENTHAL, LLP, et al.

No. 49, Sept. Term, 2010.

Court of Appeals of Maryland.

July 12, 2011.

Ellis J. Koch, Rockville, MD, for Petitioner.

Alvin I. Frederick (James E. Dickerman and Larry L. Puckett of Eccleston & Wolf, P.C., Hanover, MD), on brief, for Respondent.

Argued before BELL, C.J., BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

MURPHY, J.

In *Kurstin v. Bromberg*, 191 Md.App. 124, 990 A.2d 594 (2010), the Court of Special Appeals dismissed an appeal from the Circuit Court for Montgomery County that had been noted by Coralie Kurstin, Petitioner, who then requested that this Court issue a writ of certiorari to address four questions:

1. Is the attorney-client privilege a testimonial privilege only that is not violated unless and until the information gained is admitted as evidence in a trial such that the privilege does not protect against preliminary revelation of information?

2. Even if not appealable under the Collateral Order Doctrine, was the case properly appealable as a final judgment as to the undersigned?

3. Does Maryland appellate procedure or the Supreme Court case of *Mohawk Industries Inc. v. Carpenter* [——U.S. ——], 130 S.Ct. 599 [175 L.Ed.2d 458] (2009) act as an absolute bar to appellate review under the Collateral Order Doctrine of discovery orders involving the attorney-client privilege?

4. Do the Maryland discovery rules permit inquiry into attorney-client protected matters when no claim has been brought in order to determine if a claim can be brought?

We granted Petitioner's request. 415 Md. 38, 997 A.2d 789 (2010).

Bromberg Rosenthal, LLP, and a member of that firm, Respondents, argue that the case at bar presents three questions:

I. Did the Court of Special Appeals correctly conclude that the Circuit Court's denial of a motion to quash and motion for a protective order in an ongoing case was not immediately appealable?

II. Was it within the Circuit Court's discretion to deny Petitioner's motion to quash and motion for a protective order?

III. Did the Circuit Court correctly conclude that by filing a legal malpractice claim against Respondents, Petitioner had implicitly waived her attorney client privilege with successor counsel?

For the reasons that follow, we answer "yes" to Respondents' first question, and shall therefore affirm the judgment of the Court of Special Appeals.

## Background

In the District Court of Maryland for Montgomery County, Respondent Bromberg Rosenthal filed a Complaint against Petitioner, seeking a judgment for the balance of fees owed by Petitioner under "a contract (Employment Agreement) in which [Petitioner] hired [Respondent] to represent her in matters relating to and arising out of her divorce." Petitioner

filed a JURY DEMAND and, after the District Court transmitted the record to the Circuit Court for Montgomery County, Petitioner filed an ANSWER, COUNTER CLAIM AND JOINED PARTY COMPLAINT that included the following assertions:

3. [Respondents] negotiated on behalf of [Petitioner] an agreement for the children as third-party beneficiaries memorialized in open court which agreement stated:

> Dr. Kurstin is going to continue to maintain his current life insurance policy of 1.5 million dollars for the benefit of the parties' children, and this beneficiary designation will be irrevokable [sic].

*　　*　　*

4. [Petitioner] gave substantial consideration to acquire this policy for the benefit of her children.

5. [Respondents] failed to complete their obligation as counsel to effectuate the agreement by notifying the insurance carrier of the irrevocable designation of beneficiary.

6. Ronald Kurstin subsequently modified the designation of beneficiary naming his girlfriend. If [Respondents] had discharged their duty as counsel, the modification in beneficiary could not have been made.

7. Suite was instituted to enjoin distribution and reform the insurance contract. The suit was settled with Ronald Kurstin receiving $250,000.00. This sum was lost to [Petitioner] through the failure by [Respondents] to discharge their duty as counsel.

8. The failure to discharge their duty was not only a breach of contract but an act of negligence.

9. The actions by [Respondents] was the proximate cause of the loss of $250,000.00.

*　　*　　*

WHEREFORE, [Petitioner] prays damages of $500,000.00, prejudgment interest on the liquidated amount of $250,000.00 costs and attorney's fees.

During pretrial skirmishing, Respondents issued a subpoena duces tecum to Petitioner's present counsel, who filed a MOTION TO QUASH NOTICE OF DEPOSITION AND FOR PROTECTIVE ORDER that included the following assertions:

1. There is no justification in law permitting inquiry into the matters covered by the attorney-client privilege, work product privilege or mental impressions of counsel.

2. There has been no waiver of the attorney-client privilege in the separate case in which undersigned counsel represented Coralie Kurstin as a result of the action for malpractice arising from the prior domestic case in which undersigned counsel was not involved.

The motion was accompanied by a MEMORANDUM that provided the following procedural history:

*The First Case*—This was a domestic proceeding, Family law 17598, resulting in a judgment of absolute divorce on December 31, 2002 between Coralie Kurstin and Ronald Kurstin (now deceased). In that case, a settlement agreement was entered into in open court. The settlement agreement included, *inter alia:*

> Dr. Kurstin is going to continue to maintain his current life insurance policy of 1.5 million dollars for the benefit of the parties' children, and this beneficiary designation will be irrevokable [sic].

This settlement agreement was incorporated and not merged into the decree. The case was completed but matter lay quiescent except for occasional modifications of alimony not here relevant. Undersigned counsel was not involved in this case and was, not at that time, even familiar with the parties.

*The Second Case*—This case arose where Ronald Kurstin was terminally ill with Stage 4 lung cancer. Death was imminent. Coralie Kurstin and the children learned that contrary to the settlement agreement, Ronald Kurstin had designated his girlfriend [ ] as beneficiary on the policy.

Coralie Kurstin came to undersigned counsel when the designation of [the girlfriend] became known. Undersigned counsel then filed case number 272038 in this Court on June 2, 2006 originally denominated as *Coralie Kurstin and Randy A. Kurstin (one of the children) v. Ronald Kurstin, USAA Life* (the issuer of the 1.5 million dollar policy) *and [the girlfriend]*. The Plaintiff parties were subsequently amended to include all four children. During this process, Coralie Kurstin learned that her counsel, [Respondents], had never notified USAA Life of the settlement agreement and its relationship to the designation of its beneficiaries.

\* \* \*

*The Third Case*—[Respondents] then decided to sue for $25,000.00 in District Court for fees they alleged were owed to them by Coralie Kurstin.

The District Court case was removed to Circuit Court by jury demand and a counterclaim alleging malpractice was added.

In defending the malpractice action, [Respondent Bromberg Rosenthal] seeks the deposition duces tecum of the undersigned counsel with the expressed intent of possibly suing the undersigned counsel for contribution and indemnification intending to allege negligence in advance as to risk assessment given to Coralie Kurstin and the children upon which they based their determination to settle the Second Case recited above.

For the reasons presented below, their position as to a waiver of attorney-client privilege by Coralie Kurstin permitting inquiry of undersigned counsel is not well taken. (Footnote omitted).

Respondents filed an OPPOSITION TO MOTION TO QUASH that included the following assertions:

7. [Respondents] were not involved in that litigation and desire to question [Petitioner's present counsel] as to (a) his representation of [Petitioner] in the litigation of Mr. Kurstin, (b) what recommendation, if any, he made with respect to the settlement of the litigation against Mr. Kurstin and

(c) any communication that he had with the [Petitioner] regarding the decision to settle the action. [Respondents] contend that the [Petitioner] has waived the attorney client privilege with respect to those matters by filing this lawsuit and thereby putting those matters at issue, since the requested information is relevant to the claims and defenses being pursued herein.

\* \* \*

9. [Respondents] request that this court make a determination that the attorney client privilege between the [Petitioner] and [Petitioner's present counsel] has been waived with respect to the matters set forth above and as result, deny [Petitioner's present counsel's] Motion to Quash Notice of Deposition for Protective Order.

\* \* \*

As the information being sought by [Respondents] is limited and is clearly important to [Respondents'] defense in this matter, the Court should determine that the [Petitioner], by filing her Counterclaim and Joined Party Complaint against [Respondents], has implicitly waived her attorney-client privilege with [Petitioner's present counsel]. If the court rules otherwise, it will permit the [Petitioner] to shield potentially relevant information necessary to [Respondents'] defense in this case while simultaneously maintaining a claim against [Respondents] for legal malpractice. As the Court of Appeals set forth in *Parler & Wobber v. Miles & Stockbridge* [, 359 Md. 671, 756 A.2d 526 (2000) ], Maryland law does not countenance such a result.

(Footnotes omitted).

The Circuit Court entered the following ORDER:

Upon consideration of the Motion to Quash Notice of Deposition and for Protective Order filed by [Petitioner's present counsel], and the opposition thereto & Defendant's reply[,] it is this *8th* day of *January*, 2009, by the Circuit Court for Montgomery County, hereby

**ORDERED,** that the Motion to Quash Notice of Deposition and for Protective Order filed by [Petitioner's present counsel] is hereby **DENIED;** and it is further

**ORDERED,** that the attorney-client privilege between the [Petitioner] and [Petitioner's present counsel] has been waived.

(Strikeout in original).

Petitioner noted an appeal to the Court of Special Appeals from the January 8, 2009 Order, and the Court of Special Appeals dismissed that appeal as premature in a reported opinion that included a discussion of cases in which this Court has (1) announced the rule that interlocutory discovery orders do not satisfy the requirements of the collateral order doctrine,[1] and (2) recognized the rare exceptions to that rule.[2] 191 Md.App. at 153–54, 990 A.2d at 610–11. The opinion of the Court of Special Appeals concluded as follows:

Whether the ruling in this case is measured on an ad hoc basis against the four conjunctive criteria of the collateral order doctrine or is treated categorically as within the class of discovery rulings adverse to the attorney-client privilege, either of which approaches alone would be fatal to the appellant's immediate cause, it fails to qualify for immediate appealability under the collateral order doctrine. By way of the case-by-case long way around or by way of the categorical short cut, this appeal is off the tracks.

*Id.* at 158, 990 A.2d at 614.

### Discussion

In *Nnoli v. Nnoli,* 389 Md. 315, 884 A.2d 1215 (2005), this Court stated:

---

1. Included in this category are *St. Mary's County v. Lacer,* 393 Md. 415, 428–31, 903 A.2d 378, 386–87 (2006), and *In re Foley,* 373 Md. 627, 636, 820 A.2d 587, 592–93 (2003).

2. Included in this category are *Ehrlich v. Grove,* 396 Md. 550, 572, 914 A.2d 783, 797 (2007), *St. Joseph Medical Center v. Cardiac Surgery Associates,* 392 Md. 75, 87, 896 A.2d 304, 311 (2006), and *Montgomery County v. Stevens,* 337 Md. 471, 479–80, 654 A.2d 877, 880–81 (1995).

The collateral order doctrine treats as final and appealable interlocutory orders that (1) conclusively determine the disputed question; (2) resolve an important issue; (3) resolve an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable on appeal from a final judgment. *Dawkins v. Baltimore Police*, 376 Md. 53, 58, 827 A.2d 115, 118 (2003). The collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. *Id.* at 58–59, 827 A.2d at 118. In particular, the fourth prong, unreviewability on appeal, "is not satisfied except in 'extraordinary situations.'" *Shoemaker v. Smith*, 353 Md. 143, 170, 725 A.2d 549, 563 (1999) (quoting *Bunting v. State*, 312 Md. 472, 482, 540 A.2d 805, 809 (1988) (per curiam)).

*Id.* at 329, 884 A.2d at 1223.

 Although the appeal to the Court of Special Appeals was noted by Petitioner, rather than by her present counsel, her present counsel now argues that he has standing to obtain appellate review of a discovery order that requires him to reveal allegedly privileged information.[3] We do not agree with that argument. While an attorney can assert the attorney-client privilege on behalf of his or her client, it is the client who is the holder of the privilege. If the client has no right to immediate appellate review of a pretrial determination that the client has waived the privilege, it would exalt form over substance to hold that the client's attorney has such a right.

 The Court of Special Appeals noted that the case of *Mohawk Industries, Inc. v. Carpenter*, 568 U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009) was "most directly on point[.]" 191 Md.App. at 155, 990 A.2d at 612. In *Harris v. State*, 420 Md. 300, 22 A.3d 886 (2011), this Court stated:

---

3. Petitioner's brief in this Court asserted that the case at bar presents six questions for our review, one of which is: "1. Did appellate jurisdiction vest as an appeal from a final order as to [Petitioner's present counsel]?"

... *Mohawk Industries* is instructive, if not binding, because it ... addresses appellate jurisdiction over final decisions arising from 28 U.S.C. § 1291, which is read in pari materia with § 12–301 of the Courts and Judicial Proceedings Article. *Sigma,* 297 Md. at 664, 467 A.2d at 485 (citing *Stewart v. State,* 282 Md. 557, 571, 386 A.2d 1206 (1978) (stating "there [is] no substantive difference between 28 U.S.C. § 1291 and the Maryland statute.")).

420 Md. at 323 n. 22, 22 A.3d at 899 n. 22.

The opinion of the Court of Special Appeals includes the following analysis:

On December 8, 2009, [the United States Supreme Court] rendered its decision in the case of *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458. Mohawk Industries was being sued in a pending class action for conspiring to drive down its employees' wages by hiring undocumented immigrants. Carpenter, a shift supervisor for Mohawk, was unaware of the class action suit when he informed Mohawk's human resources department that the company was, indeed, employing undocumented immigrants. Mohawk officials directed Carpenter to meet with the counsel who were defending the company in the class action suit. Counsel pressured Carpenter to get him to recant his statement about the company's use of undocumented immigrants. When Carpenter refused to do so, Mohawk fired him for what, he claimed, were false and spurious reasons. In his case against Mohawk for illegal termination of employment, Carpenter moved to compel Mohawk to produce information about his conversations with the attorneys representing Mohawk in the class action suit. Mohawk refused to do so, invoking the attorney-client privilege. The District Court granted Carpenter's motion to compel discovery, ruling that the attorney-client privilege had been waived. Mohawk appealed. The Court of Appeals for the Eleventh Circuit dismissed Mohawk's appeal, holding that it did not qualify as an appealable order under the collateral order doctrine. [*Carpenter v. Mohawk Industries, Inc.,* 541 F.3d

1048, 1053 (11th Cir.2008) ]. The Supreme Court granted certiorari.

At the outset of her opinion for the Court, Justice Sotomayor described the issue as one involving a "disclosure order adverse to the attorney-client privilege."

> *The question before us is whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine.* Agreeing with the Court of Appeals, we hold that *they do not.* Postjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege.

558 U.S. at ——, 130 S.Ct. at 603, 175 L.Ed.2d at 464 (emphasis supplied).

\* \* \*

While acknowledging the importance of the attorney-client privilege, the Supreme Court nonetheless maintained:

> *The crucial question, however, is not whether an interest is important in the abstract; it is whether deferring review until final judgment* so imperils the interest as to justify *the cost of allowing immediate appeal of the entire class of relevant orders.* We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.

\* \* \*

> ■ In our estimation, *postjudgment appeals generally suffice to* protect the rights of litigants and *assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure* of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: *by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.*

558 U.S. at ——, 130 S.Ct. at 606–07, 175 L.Ed.2d at 467–468 (emphasis supplied). It is clear that the breach of the testimonial privilege occurs not when the information is

revealed but when it is used, directly or derivatively, at trial.

\* \* \*

That a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are "only imperfectly reparable" does not justify making all such orders immediately appealable as of right under § 1291.

\* \* \*

In sum, we conclude that *the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege.* Effective appellate review can be had by other means.

558 U.S. at ——, 130 S.Ct. at 609, 175 L.Ed.2d at 471 (emphasis supplied).

Maryland's approach to the non-appealability of a discovery ruling compelling the disclosure of information presumably protected by the attorney-client privilege has been as generic and categorical as has been that of the Supreme Court. In *Electronic Data Systems Federal Corporation v. Westmoreland Associates, Inc.,* 311 Md. 555, 556, 536 A.2d 662 (1988), the review of the Court of Appeals was limited to the single

jurisdictional issue of whether the interlocutory orders of the trial court, which compelled the production of documents alleged to be privileged under the attorney client relationship, were properly appealable under the collateral order doctrine.

Without any necessity of probing further into the particular circumstances of the discovery ruling in issue or into the details of the underlying case, the Court broadly

concluded that *the collateral order doctrine is not applicable* in this case *as the orders of the trial court are subject to effective review on appeal* from a final judgment.

*Id.* (emphasis supplied).

*Id.* at 155–58, 990 A.2d at 612–14. We agree with and adopt the above quoted analysis, which is entirely consistent with *Harris, supra,* in which this Court stated:

In Maryland, discovery orders "being interlocutory in nature, are not ordinarily appealable prior to a final judgment terminating the case in the trial court." *In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 592 (2003) (reversing the Court of Special Appeals's holding that a discovery order for a medical examination of the subject of a guardianship proceeding met the four requirements of the collateral order doctrine because the order did not satisfy the third and fourth requirements). Moreover, "[i]t is well established in Maryland that generally 'interlocutory discovery orders do not meet the requirements of the collateral order doctrine and are not appealable under that doctrine.' " *Falik* [*v. Hornage* ], 413 Md. [163] at 177, 991 A.2d [1234] at 1243 [ (2010) ] (quoting *St. Joseph,* 392 Md. at 87, 896 A.2d at 311).

\* \* \*

Discovery orders

do not comply with the third requirement of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, a typical discovery order is aimed at ascertaining critical facts upon which the outcome of the ... controversy might depend. In addition, discovery orders fail to meet the collateral order doctrine's fourth element, as they are effectively reviewable on appeal from a final judgment. *Falik,* 413 Md. at 177, 991 A.2d at 1243 (quoting *St. Joseph,* 392 Md. at 87, 896 A.2d at 311). In *St. Joseph's,* we noted:

The "singular situation," [*In re Foley, supra,* 373 Md. at 636, 820 A.2d at 593] in which this Court has held that interlocutory discovery orders are appealable under the collateral order doctrine, involves trial court orders permitting the depositions of high level governmental decision makers for the purpose of "extensively probing ... their individual decisional thought processes." *Montgom-*

*ery Co. v. Stevens, supra,* 337 Md. at 479, 654 A.2d at 881, quoting *Public Service Comm'n v. Patuxent Valley,* [300 Md. 200, 207, 477 A.2d 759, 763 (1984) ].

*St. Joseph's,* 392 Md. at 88, 896 A.2d at 311 (footnote omitted).

\* \* \*

Generally, most discovery orders are not separate from the merits of an action. *See e.g., Hudson v. Housing Authority,* 402 Md. 18, 26, 935 A.2d 395, 399–400 (2007) (determining that interrogatories inquiring into the underlying facts of the Housing Authority's claim against a tenant and his breach of a residential lease were critical to an ultimate determination of that breach) and cases cited therein. For example, in *In re Foley,* 373 Md. at 635, 820 A.2d at 592, we held that an order for a medical examination of the subject of guardianship proceedings "was obviously not completely separate form the merits of the controversy. On the contrary, it was a typical discovery order aimed at ascertaining critical facts upon which the outcome of the guardianship controversy might depend." Moreover, in *Sigma* [*Reproductive Health Center v. State,* 297 Md. 660, 467 A.2d 483 (1983) ], this Court held that "the denial of the motion to quash [a subpoena duces tecum] is not appealable" because "the order to produce documents ... is not completely separate from the merits of the criminal proceedings." *Sigma,* 297 Md. at 670, 467 A.2d at 488.

\* \* \*

Generally, "discovery orders fail to meet the collateral order doctrine's fourth element, as they are effectively reviewable on appeal from a final judgment" and "[a] party aggrieved by a discovery order and aggrieved by the final judgment may challenge the discovery ruling on appeal from the final judgment." *St. Joseph's,* 392 Md. at 87, 896 A.2d at 311 (citing *Foley,* 373 Md. at 635, 820 A.2d at 587)[.]

\* \* \*

The United States Supreme Court, when considering the "importance" of the attorney-client privilege, declined to

hold that orders adverse to the privilege were immediately appealable under the collateral order doctrine stating "we routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Mohawk Industries,* 558 U.S. at —, 130 S.Ct. at 606, 175 L.Ed.2d at 467.

*Harris v. State,* 420 Md. 300, 22 A.3d 886 (2011), *Id.* at 323, 22 A.3d at 899.

A review of the above quoted portions of the papers filed by the parties in the Circuit Court compels the conclusion that the discovery order from which Petitioner noted an appeal has decided an issue that (1) is inextricably intertwined with the merits of the action, and (2) will be reviewable on appeal from a final judgment. We therefore hold that the Court of Special Appeals correctly dismissed Petitioner's appeal, and affirm the judgment of that Court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY THE COSTS.**