41 A.3d 572

**Michael Lee ADAMS**

v.

**STATE of Maryland.**

**John Wesley Ray**

v.

**State of Maryland.**

**Nos. 352, 435, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Feb. 8, 2012.

See also 410 Md. 384, 978 A.2d 736.

David P. Kennedy (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: GRAEFF, HOTTEN, JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

KENNEY, J.

Maryland Code, sections 3–106 and 3–107 of the Criminal Procedure Article (CP) govern proceedings involving a criminal defendant who, by reason of mental retardation or mental disorder, is incompetent to stand trial. *See Walker v. State,* 392 Md. 1, 2, 9, 895 A.2d 1024 (2006) ("Incompetence to stand trial is defined in CP § 3–101(f) as an inability to understand the nature or object of the proceeding or to assist in one's defense."). These consolidated appeals arise in the aftermath of *Ray v. State,* 410 Md. 384, 978 A.2d 736 (2009), in which the Court of Appeals enforced the mandate in CP section 3–107(a)(2) that felony charges must be dismissed when the defendant remains incompetent after five years. The novel question presented here is whether, following such a dismissal, the State may (a) re-indict the same defendant for the same crimes, even though he remains incompetent; and (b) on the basis of such re-indictment, continue to confine that defendant under a criminal, rather than a civil, commitment.

In these appeals, John Wesley Ray, appellant, returns and is joined by Michael Lee Adams, appellant, in challenging the State's actions in response to *Ray*. Although the original felony indictments against both appellants were dismissed in accordance with the Court of Appeals' decision in *Ray* and CP section 3–107(a)(2), the State re-indicted both appellants on the same charges even though they were still not competent to stand trial. Based on these re-indictments, moreover, appellants have remained confined, pursuant to CP section 3–106, under criminal commitments.

In their brief, Ray and Adams present a single issue for our review:

Can the State indefinitely confine a criminal defendant found incompetent to stand trial and who is not likely to regain competency in the foreseeable future, in violation of CP § 3–107 and due process of law, by simply re-indicting the defendant on the same charges that are required to be dismissed pursuant to § 3–107?

The State moves to dismiss these interlocutory appeals on the ground that they are not permitted by statute, rule, or the collateral order doctrine. On the merits, the State argues that these re-indictments and continued criminal commitments are permitted by language in the *Ray* opinion stating that, following a dismissal without prejudice under CP section 3–107(a), "the State may re-institute charges[.]" *Id.* at 420, 978 A.2d 736.

For the reasons explained below, we conclude that both appeals are properly before this Court under the collateral order doctrine. In addition, we agree with appellants that their re-indictments, as well as their continued confinement under criminal commitments based on such re-indictments, violate CP sections 3–106 and 3–107 and their due process and equal protection rights protected by those sections. Accordingly, we shall reverse the orders denying appellants' motions to dismiss their re-indictments and remand for further proceedings, which may include civil commitment proceedings.

## LEGAL AND FACTUAL BACKGROUND

### Maryland's Statutory Scheme Governing Indictment and Confinement of Incompetent Defendants

A review of constitutional and statutory principles applicable to incompetent defendants is helpful before considering the posture of the two appeals now before us.

In *Jackson v. Indiana,* 406 U.S. 715, 738–39, 92 S.Ct. 1845, 1854, 32 L.Ed.2d 435 (1972), the Supreme Court held that, by subjecting Jackson, an incompetent defendant,

> to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded by [statute], Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment....
>
> For reasons closely related to those ..., we also hold that Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process.

(Footnote omitted.)

The *Jackson* Court explained that, "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.,* 406 U.S. at 738, 92 S.Ct. at 1858. Thus,

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment

proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

*Id.* (footnote omitted). Although the Supreme Court declined "to prescribe arbitrary time limits," citing the existence "of differing state facilities and procedures and a lack of evidence in this record," it did "note ... that petitioner Jackson has now been confined for three and one-half years on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial." *Id.,* 406 U.S. at 738–39, 92 S.Ct. at 1858.

Implementing the due process and equal protection principles recognized in *Jackson,* sections 3–106 and 3–107 of Maryland's Criminal Procedure Article establish a maximum period for holding an incompetent defendant under indictment and standards for confining such a defendant under a criminal commitment.

Section 3–107 limits the length of time criminal charges may remain pending against incompetent defendants. Although a court has discretionary authority to dismiss charges at any time "if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial," the General Assembly has set specific times after which the court is required to dismiss charges against an incompetent defendant. Under CP section 3–107(a),

[w]hether or not the defendant is confined and unless the State petitions the court for extraordinary cause to extend the time, **the court shall dismiss the charge against a defendant found incompetent to stand trial under this subtitle:**

(1) when charged with a capital offense, after the expiration of 10 years;

(2) **when charged with a felony or a crime of violence as defined under § 14–101 of the Criminal Law Article, after the lesser of the expiration of 5 years** or the maximum sentence for the most serious offense charged; or

(3) when charged with an offense not covered under paragraph (1) or (2) of this subsection, after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged.

(Emphasis added.)

CP section 3–106(b) authorizes the court to involuntarily confine an incompetent defendant against whom criminal charges are pending, under what is known as a criminal commitment. It provides:

(1) If, after a hearing, the court finds that the defendant is incompetent to stand trial and, because of mental retardation or a mental disorder, is a danger to self or the person or property of another, **the court may order the defendant committed to the facility that the Health Department designates until the court finds that:**

(i) the defendant no longer is incompetent to stand trial;

(ii) the defendant no longer is, because of mental retardation or a mental disorder, a danger to self or the person or property of others; or

(iii) **there is not a substantial likelihood that the defendant will become competent to stand trial in the foreseeable future.**

(2) If a court commits the defendant because of mental retardation, the Health Department shall require the Developmental Disabilities Administration to provide the care or treatment that the defendant needs.

(Emphasis added.)

Defendants confined under criminal commitments receive at least annual judicial reconsideration of their incompetency, as set forth in CP section 3–106(c).[1] When a reviewing court

---

1. CP section 3–106(c) provides:

(1) To determine whether the defendant continues to meet the criteria for commitment set forth in subsection (b) of this section, the court shall hold a hearing:
(i) every year from the date of commitment;

finds that an untried defendant is not likely to become competent in "the foreseeable future," and that involuntary confinement is still necessary to protect the defendant and/or public,[2] confinement may continue only if the State satisfies the "clear and convincing evidence" standard required for civil commitment. CP section 3–106(d) provides:

At a competency hearing under subsection (c) of this section, if the court finds that the defendant is incompetent and is not likely to become competent in the foreseeable future, the court shall:

(1) civilly commit the defendant as an inpatient in a medical facility that the Health Department designates provided the court finds by clear and convincing evidence that:

(i) the defendant has a mental disorder;

(ii) inpatient care is necessary for the defendant;

---

(ii) within 30 days after the filing of a motion by the State's Attorney or counsel for the defendant setting forth new facts or circumstances relevant to the determination; and

(iii) within 30 days after receiving a report from the Health Department stating opinions, facts, or circumstances that have not been previously presented to the court and are relevant to the determination.

(2) At any time, and on its own initiative, the court may hold a conference or a hearing on the record with the State's Attorney and the counsel of record for the defendant to review the status of the case.

2. For incompetent defendants who have been found "not dangerous" and therefore "released on bail or on recognizance," the court must likewise "hold a hearing annually from the date of the release," or sooner on the court's "own initiative" or "upon motion of the State's Attorney or the counsel for the defendant." CP § 3–106(f)(1). At that hearing, the court is required to "reconsider whether the defendant remains incompetent to stand trial or a danger to self or the person or property of another because of mental retardation or a mental disorder." CP § 3–106(f)(2).

If the court finds, at [such] a hearing under paragraph (1) of this subsection, that the defendant is incompetent and is not likely to become competent in the foreseeable future and is a danger to self or the person or property of another because of mental retardation or a mental disorder, the court shall revoke the pretrial release of the defendant and ... civilly commit the defendant in accordance with paragraph (1) of subsection (d) of this section[.]

CP § 3–106(f)(4).

(iii) the defendant presents a danger to the life or safety of self or others;

(iv) the defendant is unable or unwilling to be voluntarily committed to a medical facility; and

(v) there is no less restrictive form of intervention that is consistent with the welfare and safety of the defendant.

(2) order the confinement of the defendant for 21 days as a resident in a Developmental Disabilities Administration facility for the initiation of admission proceedings under § 7–503 of the Health—General Article provided the court finds that the defendant, because of mental retardation, is a danger to self or others.

■ Conversion of an incompetent person's confinement from a criminal commitment to a civil commitment brings additional substantive and procedural rights. *See generally* CP § 3–106(e) ("The provisions under Title 10 of the Health—General Article shall apply to the continued retention of a defendant civilly committed under subsection (d) of this section."); Md.Code, § 10–701(c) of the Health—General Article (HG) (enumerating rights of individuals in a mental health facility, which include rights to be free from certain types of restraints and to "receive appropriate humane treatment and services in a manner that restricts the individual's personal liberty within a facility only to the extent necessary and consistent with the individual's treatment needs and applicable legal requirements"); HG § 10–706 (enumerating procedural requirements for creating a treatment plan for a civilly committed person, which include establishing treatment goals in consultation with the committed person).

### Appeal No. 435: Mr. Ray

In February 2001, appellant John Wesley Ray was indicted for attempted first degree murder and lesser included offenses, in the Circuit Court for Harford County. On January 2, 2002, the circuit court found that Ray, a paranoid schizophrenic, was not competent to stand trial. *See Ray,* 410 Md. at 389, 978 A.2d 736. Ray was confined under a criminal commitment to Clifton T. Perkins Hospital ("Perkins"), a

State mental health facility for, *inter alia,* incompetent defendants who have been ordered to be confined under CP section 3–106(b).[3]

More than five years later, Ray, in January 2007, moved to dismiss the charges against him, citing the mandatory dismissal provision in CP section 3–107(a)(2). *See id.* During his confinement at Perkins, Ray took anti-psychotic medication that resulted in assessments that he could be "restored" to competency, and, for brief periods, he appeared to be competent. Ultimately, however, he remained incompetent for most of those five years. *Id.* at 389–97, 404, 978 A.2d 736. At the time the circuit court decided the motion to dismiss, Ray was incompetent and considered a danger to others. *Id.* at 404, 978 A.2d 736. The circuit court denied Ray's motion, but the Court of Appeals reversed and remanded with instructions to dismiss the charges. *See id.* at 420, 978 A.2d 736.

Reviewing the statutory scheme, the Court noted that "under Section 3–107 . . ., any dismissal is without prejudice to the State reindicting and that civil commitment under Title 10 of the Health General Article . . . is always a possibility." *Id.* at 406 n. 7, 978 A.2d 736. The Court concluded that the General Assembly intended to implement the Supreme Court's decision in *Jackson* when it added dismissal deadlines in CP section 3–107 and when it "mandate[d] civil commitment when a judge determines that the defendant is not restorable to competency" in CP section 3–106. *Id.* at 415–17, 978 A.2d 736.

The Court of Appeals reversed the circuit court's holding that Ray's dangerousness and restorability to competency established "extraordinary cause" warranting extension of the five-year dismissal deadline under CP section 3–107(a)(2). *Id.* at 419, 978 A.2d 736. The Court rejected that interpretation of the statute because it permitted Ray's criminal commitment to extend "beyond the five-year period, conceivably for an indefinite period." *Id.* at 419, 978 A.2d 736. The statutory scheme, the Court pointed out, contemplates that when a

---

**3.** The Court of Appeals thoroughly summarized the mission of Perkins in *Ray,* 410 Md. at 386 n. 2, 978 A.2d 736.

defendant is *not* restorable to competency within the time frame set in CP section 3–107(a), his commitment must be converted from criminal to civil, in order to avoid the type of unreasonably indefinite criminal commitment prohibited by *Jackson*. *Id*. The Court reasoned that the "extraordinary cause" exception must be construed so that a defendant who *is* restorable to competency cannot be subjected to such an indefinite criminal commitment either. *Id*. at 419–20, 978 A.2d 736. In the Court's view, it would be

> anomalous indeed, in light of the mandate for civil commitment of an incompetent defendant who cannot be restored, that Ray, who was identified as restorable, could be held indefinitely without a commitment proceeding.
>
> In this regard, then, extraordinary cause must require more than dangerousness and restorability, in order to avoid the necessity of civil commitment that requires greater procedural protections. Dangerousness, the norm for defendants institutionalized at Perkins, cannot be viewed as extraordinary, especially because it is but one factor for civil commitment. Restorability to competency, similarly, cannot constitute "extraordinary cause," especially when restorability, a desirable characteristic, could result in indefinite institutionalization, without procedural protection. **In holding that dangerousness and restorability cannot constitute "extraordinary cause," however, we recognize that under the statute the State may re-institute charges and that civil commitment proceedings may be initiated against Ray.** Whatever decision is made, if any, the pending charges against Ray must be dismissed.

*Id*. (emphasis added and footnote omitted).

Six weeks after the *Ray* opinion was filed, on October 6, 2009, the State, relying on the *Ray* Court's statement that "under the statute the State may re-institute charges," re-indicted appellant Ray on the same charges, in Case No. 12–K–09–1693. Although the original charges were thereafter dismissed in accordance with the mandate in *Ray*, the State continued to confine Ray at Perkins, under a criminal commitment based on the second indictment.

On November 18, 2009, Ray moved to dismiss the second indictment, arguing that it "nullifies CP § 3–107(a)" and that "his continued incarceration at Perkins den[ies] him the right to civil commitment pursuant to CP section 3–106(a)–(e)." While that motion was pending, Ray responded to the second indictment, pleading, *inter alia*, that he was still not competent to stand trial. Ray was examined and, although there once again was evidence that he might be restored to competency with supervised medication and treatment, he was again found to be incompetent to stand trial.

Thereafter, in a written opinion, the circuit court denied Ray's motion to dismiss. With respect to the second indictment, the court reasoned that CP section 3–107(a)(2) specifies that the dismissal of criminal charges against an incompetent defendant after five years is "without prejudice" and that the Court of Appeals had stated that the State could "reinstitute charges" against Ray. As for Ray's right to civil commitment under CP section 3–106(d), the court was "uncertain how the current indictment precludes [Ray] from again averring that he is incompetent to stand trial and thereby availing himself of possible civil commitment pursuant to CP § 3–106(b)." In the circuit court's view, the new indictment did "not prevent [Ray] from being committed" under the civil commitment subsections of CP section 3–106 "after a trial judge has made the necessary findings of fact." At the time this appeal was noted on his behalf, Ray was still confined at Perkins under a criminal commitment.

### Appeal No. 352: Mr. Adams

In 1998, appellant Michael Lee Adams was indicted on charges of attempted first degree rape and related offenses, in Case No. 98–CR–3113 in the Circuit Court for Baltimore County. Since Adams was first found incompetent to stand trial due to his limited cognitive ability, he has been continuously confined under a criminal commitment.[4]

---

4. Until December 30, 2008, Adams resided at the Rosewood Center, a facility for mentally retarded persons operated by the Maryland Devel-

After the Court of Appeals' decision in *Ray*, Adams moved to dismiss his indictment, citing *Ray* and CP section 3–107(a)(2). The Circuit Court for Baltimore County dismissed those charges without prejudice.

Two months earlier, however, on January 19, 2010, the State had re-indicted Adams on the same charges, in Case No. 03–K–10–0353. Adams' motion to prevent the re-indictment was denied. After Adams pleaded incompetency, he was re-evaluated.

Adams then moved to dismiss the second indictment. At the hearing on that motion, the public defender representing Adams argued that "the net effect" of the State's re-indictment "is to circumvent *Jackson* completely" and to distort the decision in *Ray*. He maintained that under "a fair reading" of *Ray* and *Jackson*, "until there is reason for the State to conclude that Mr. Adams either is currently competent or that he will become competent in the reasonably foreseeable future, . . . it's not ripe for them to recharge." The circuit court then pointed out that Adams had "been found to be not competent for many, many years now[,]" and the prosecutor acknowledged that, due to "organic difficulties that he has," "it's very unlikely that he would ever be[ ] found competent[.]"

Noting the dearth of statutory and appellate authority regarding "the way that new charges could be filed with the timing," the court observed that "both sides agree the State can re [-]indict." Although the court agreed with the public defender that neither *Jackson* nor *Ray* contemplate that the State "could keep every five years or 10 years re-upping or recharging the [d]efendant," it concluded that, "based on the circumstances of this case and the procedure of this case, I do believe his due process rights have not been violated[.]" The circuit court therefore denied Adams' motion to dismiss.

---

opmental Disabilities Administration, within the Department of Health and Mental Hygiene. *See Walker*, 392 Md. at 5, 895 A.2d 1024. Since then, he has resided in a locked Secure Evaluation and Therapeutic Treatment (SETT) unit in Sykesville.

Adams noted this appeal, which this Court consolidated for briefing and argument with Ray's subsequently filed appeal.

## DISCUSSION

### The State's Motion to Dismiss These Appeals

The State moves to dismiss both appeals on the grounds that neither is from a final appealable judgment or "otherwise permitted pursuant to statute, Maryland Rule 2–602, or the collateral order doctrine." We are persuaded that these interlocutory appeals are appropriate under the collateral order doctrine.

The Court of Appeals recently summarized this exception to the general rule that "the right to seek appellate review . . . must await the entry of a final judgment, disposing of all claims against all parties[,]" *Shoemaker v. Smith*, 353 Md. 143, 165, 725 A.2d 549 (1999), as follows:

> Maryland's collateral order doctrine has its roots in the important policy underlying the final judgment rule, which is to "prevent piecemeal appeals and . . . the interruption of ongoing judicial proceedings." The doctrine "is very limited," and permits the immediate appeal of only a "narrow class of orders" that are "offshoots of the principal litigation in which they are issued" and are considered "final judgments without regard to the posture of the case[.]" To come within the collateral order doctrine, the order sought to be reviewed must be one that: "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment."

*Stephens v. State*, 420 Md. 495, 502, 24 A.3d 105 (2011) (citations omitted).

The State does not argue that the orders denying appellants' motions to dismiss their re-indictments are inconclusive as to the disputed question or that they do not resolve an

important issue. Instead, the State contends that these orders do not satisfy the third and fourth requirements for collateral order review. According to the State, the issue of whether appellants' re-indictments must be dismissed is "inextricably linked" to the merits of whether appellants are guilty of the charges against them because "the question about their criminal liability will never be reached" if the charges against them are dismissed. Moreover, the State argues, "[t]he rulings at issue would not be 'effectively unreviewable on appeal from final judgment" because "[i]f Adams and Ray are found competent to stand trial, and they are tried and convicted, nothing would prevent them from seeking appellate review of the circuit court's denial of any motions to dismiss."

There is no Maryland precedent addressing the State's re-indictment of an incompetent defendant after a CP section 3–107(a) dismissal, much less any authority deciding whether an interlocutory appeal lies from an order deciding that the State may do so. However, the Court of Appeals' seminal decision adopting the collateral order doctrine in *Jolley v. State*, 282 Md. 353, 384 A.2d 91 (1978), where the appellant challenged an order finding him incompetent to stand trial, is instructively analogous. *See generally Kurstin v. Bromberg Rosenthal, LLP*, 191 Md.App. 124, 140, 990 A.2d 594 (2010) ("Maryland first adopted the collateral order doctrine in the opinion of Judge Orth for the Court of Appeals in *Jolley v. State* "), *aff'd*, 420 Md. 466, 24 A.3d 88 (2011).

The *Jolley* Court concluded that a

decision that an accused is incompetent to stand trial appears to fall in that small class which finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.... [T]he order here is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it; it does not make any step toward final disposition of the merits of

the case and will not be merged in final judgment.... "When that time comes, it will be too late effectively to review the present order, and the rights conferred by the [constitutions] ... will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision on the merits of this case." We hold that the challenged order is appealable.

282 Md. at 357, 384 A.2d 91 (citations and footnotes omitted).

As in *Jolley*, the incompetency issue presented by these interlocutory appeals is entirely separate from the merits of the underlying criminal charges against appellants. The orders denying appellants' motions to dismiss their re-indictments can easily be reviewed without considering whether appellants are guilty of the crimes for which they have been re-indicted. As we shall demonstrate, deciding whether the State may re-indict appellants even though they remain incompetent does not require us to address whether appellants ultimately may be found criminally responsible on the charges in these indictments.

Moreover, the State's argument that the challenged orders are not "effectively unreviewable" is premised on a factual scenario that does not exist in either of these appeals, i.e., that appellants have become competent. To the contrary, the question presented by Ray and Adams arises only because appellants still have *not* become competent to stand trial, so that this issue exists only in cases that cannot proceed to appealable final judgments after trial. As in *Jolley*, without interlocutory review, " 'it will be too late effectively to review the present order[s], and the rights conferred by the [statute and Constitution] ... will have been lost, probably irreparably.' " *Id.* (citation omitted).

Because the orders denying appellants' motions to dismiss their current indictments satisfy all four criteria for collateral orders, we deny the State's motion to dismiss these appeals.

### Appellants' Motions to Dismiss the Re–Indictments

Citing *Jackson, Ray,* and CP sections 3–106 and 3–107, appellants Ray and Adams argue that

> the State cannot indefinitely confine a criminal defendant found incompetent to stand trial and who is not likely to regain competency in the foreseeable future, in violation of CP § 3–107 and due process of law, by simply re-indicting the defendant on the same charges that are required to be dismissed pursuant to § 3–107.

According to appellants, the new indictments are a "subterfuge" by which the State is impermissibly circumventing the mandates of CP sections 3–106 and 3–107.

The State takes the position that, following a mandatory dismissal under CP section 3–107(a)(2), it can immediately re-start the five-year clock by filing a new indictment on the same criminal charges, even when the defendant remains incompetent. In the State's view, appellants' re-indictments, as well as their continued confinements under criminal commitments as a result of those re-indictments, are permissible because a section 3–107(a) dismissal is without prejudice and the *Ray* Court explicitly "recognized that under the statute, the State may re-institute charges[.]" *Ray,* 410 Md. at 420, 978 A.2d 736. The State maintains that this language is law of the case in Ray's appeal and mandatory precedent in Adams' appeal. *See generally Scott v. State,* 379 Md. 170, 183, 840 A.2d 715 (2004) ("once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be law of the case").

■ We are not persuaded the *Ray* Court ruled that the State could immediately re-indict Ray regardless of his continuing incompetency. Ray's appeal from his original indictment did not present that issue, and we do not agree that the Court decided that question prospectively.

To be sure, in holding that dismissal of Ray's original indictment was mandated by section 3–107(a)(2), the Court of Appeals observed that "the State may re-institute charges...." *Id.* at 420, 978 A.2d 736. But that phrase was

only the first part of a sentence that ended by also pointing out "that civil commitment proceedings may be initiated against Ray." *Id.* When this sentence is read in the full context of the Court's decision and rationale, which rests on the constitutional principles articulated in *Jackson,* as implemented in CP sections 3–106 and 3–107, we believe the Court of Appeals was simply acknowledging, in dictum, that it would be appropriate for the State to re-indict Ray if and when he becomes competent to stand trial, and that, in the meantime, the State could initiate civil commitment proceedings in order to maintain Ray's involuntary confinement.

As the *Ray* Court recognized, we must read CP sections 3–106 and 3–107 *in pari materia* and in light of the General Assembly's intent to comply with the *Jackson* Court's holding that an incompetent defendant may be held only for the period of time reasonably necessary to determine whether he is likely to become competent to stand trial, and thereafter, "the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *See Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858. Although the Supreme Court declined to set a time limit on the "reasonable period" for making a probable competency determination, the General Assembly has effectively done so in sections 3–106 and 3–107.

■ The statutory scheme establishes the maximum period that an indictment may remain pending against an untried but incompetent defendant (section 3–107(a)), authorizes the court to order a criminal commitment only "until the court finds that . . . there is not a substantial likelihood that the defendant will become competent to stand trial in the foreseeable future" (section 3–106(b)(1)(iii)), mandates regular judicial review of each criminally committed defendant's competency (section 3–106(c)), and requires the court to convert a commitment from criminal to civil once "the court finds that the defendant . . . is not likely to become competent in the foreseeable future" (section 3–106(d)). The dismissal deadlines in section 3–107(a) provide yardsticks for measuring "the reasonable period of

time necessary to determine whether there is a substantial probability that [the defendant] will attain [competency] in the foreseeable future." *See Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858. In the case of felony indictments like those at issue in this appeal, the five-year period in section 3–107(a)(2) reflects the General Assembly's assessment that, except in "extraordinary" cases, this is sufficient time for the court to make the probable competency determination required by *Jackson* and CP section 3–106. Thus, under the statutory scheme implementing *Jackson,* when a defendant remains incompetent after five years, as in the case of Ray and Adams, the felony indictment must be dismissed and any further confinement must be converted from a criminal to a civil commitment.

Section 3–107(a) expressly provides that such a dismissal is without prejudice, indicating the General Assembly contemplated that, at one point in time, the State could decide to re-indict after such a dismissal. Generally, "whether the State's Attorney does or does not institute a particular prosecution is a matter which rests in his discretion[,]" *Brack v. Wells,* 184 Md. 86, 90, 40 A.2d 319 (1944), and the statutory scheme does not limit the State's authority to re-indict.[5] In this, as in the exercise of other prosecutorial powers to charge and try citizens, the State is obligated to act in good faith.[6] In

---

**5.** As appellants point out, other states have explicitly adopted restrictions on prosecutorial authority to re-indict following a mandatory dismissal of charges against an incompetent defendant. *See, e.g., Michigan v. Miller,* 440 Mich. 631, 489 N.W.2d 60, 62 (1992) (applying Mich. Comp. Laws § 330.2044, which mandates dismissal of charges against incompetent defendants after a specified period and explicitly requires a prosecutor to obtain leave of court to re-indict, upon proof that the defendant has become competent to stand trial); *Florida v. Smith,* 982 So.2d 756, 757 (Fla.Ct.App.2008) (enforcing Fla. R.Crim. P. 3.213(a)(1) requiring dismissal of charges against an incompetent defendant after five years "without prejudice to the state to refile the charges should the defendant be declared competent to proceed in the future").

**6.** *Cf., e.g., Stanley v. State,* 313 Md. 50, 61, 542 A.2d 1267 (1988) (prosecutor must exercise good faith in using peremptory strikes for non-discriminatory reasons that can be articulated with reasonable specificity). *Curley v. State,* 299 Md. 449, 459, 474 A.2d 502 (1984) (when the State nol prosses criminal charges and later re-files them,

the circumstances presented here, we agree with appellants that, in order to avoid undermining the statutory scheme designed to protect the constitutional rights of incompetent persons, the State may not re-indict after a section 3–107(a) dismissal until it can articulate a good faith basis to believe that the defendant has become competent to stand trial.[7] Otherwise, the only purpose that can be served by the re-indictment is the constitutionally impermissible purpose of continuing the defendant's confinement under a criminal commitment.

The State's interpretation of the statute, premised on the "re-institute" phrase parsed from the final paragraph in *Ray*, is inconsistent with the *Ray* Court's holding that section 3–107(a) cannot be read so broadly that it permits indefinite indictments and criminal commitments of incompetent citizens. We are not persuaded that the Court of Appeals intended to give the State a "green light to re-indict" someone in a state of persistent incompetency, because such re-indictment would effectively eviscerate the statutory five-year deadline and run afoul of *Jackson* and *Ray*, by creating a "back door" that

----

"the prosecution must be acting in 'good faith' or so as to not 'evade' or 'circumvent' the requirements of the statute or rule setting a deadline for trial"); *Elliott v. State,* 185 Md.App. 692, 733, 972 A.2d 354 (2009) (prosecutor's decision not to preserve evidence must be made in good faith); *Miles v. State,* 88 Md.App. 360, 387, 594 A.2d 1208 (1991) (prosecutor's "opening statement should not include reference to facts which are plainly inadmissible and which he cannot or will not be permitted to prove, or which he in good faith does not expect to prove"); *Sturgis v. State,* 25 Md.App. 628, 636, 336 A.2d 803 (1975) (prosecutor must exercise good faith with respect to negotiated guilty pleas and sentence recommendations).

7. Appellants suggest that the State could re-indict when there is a likelihood of competency "in the foreseeable future[,]" but in our view, allowing the State to re-indict a defendant who remains incompetent after five years, based on a prospect that he might become competent at some unspecified point over the next five years while that new indictment is pending, would be inconsistent with the *Jackson* Court's holding that incompetent persons cannot be held under indictment and criminal commitment once a court has had a "reasonable period of time" to assess competency and the defendant has remained incompetent throughout that period.

allows prosecutors, by serial indictments, to maintain incompetent defendants under criminal commitments.

As applied to Adams, for example, the State's construction of *Ray* and the statutory scheme could easily circumvent sections 3–106 and 3–107. Because Adams appears unlikely to become competent, he could be held under the second indictment and criminal commitment for another five years, followed by dismissal without prejudice, then re-indictment and continued criminal commitment for five more years, leading to yet another dismissal without prejudice, and so on, *ad infinitum*. Adopting the State's position that prosecutors have carte blanc to re-indict defendants like Adams, who are still incompetent more than five years after indictment, would require us to construe the statutory scheme in a manner that violates the constitutional principles articulated in *Jackson*, implemented in sections 3–106 and 3–107, and enforced in *Ray*. Cf., e.g., *Connecticut v. Jenkins*, 288 Conn. 610, 625–26, 954 A.2d 806 (2008) (rejecting government's argument that statute requiring dismissal of charges after 18 months of incompetency did not apply to defendant who was incompetent over a series of non-consecutive criminal commitments that each lasted less than 18 months but cumulatively exceeded 18 months, because interpreting the statutory scheme to allow such "an unlimited number of" incompetency commitments would place it "in serious constitutional jeopardy, a result that we must seek to avoid").

Despite expressing doubt that the State could lawfully engage in serial indictments of an incompetent defendant, the Circuit Court for Baltimore County erroneously concluded that Adams' second indictment did not violate his due process right to dismissal under CP section 3–107(a)(2). For the reasons explained above, the State could not lawfully re-indict Adams because, as the prosecutor admitted, there was no reason to believe that Adams had become competent to stand trial.

Similarly, in Ray's case, the Circuit Court for Harford County erred in concluding that the Court of Appeals author-

ized re-indictment despite Ray's continuing incompetency, and that Ray's confinement under a criminal commitment could continue until he requested and established his right to a civil commitment. In these circumstances, denying Ray's motion to dismiss the second indictment and requiring Ray to establish his right to a civil commitment violated the due process and equal protection rights protected under CP sections 3–106 and 3–107.

Accordingly, we must reverse the orders denying appellants' motions to dismiss their current indictments and remand for further proceedings. In each case, the pending indictment must be dismissed. The State may re-indict only if it has a good faith belief that the appellant has become competent to stand trial. As long as each appellant remains incompetent, the State, to continue confinement, may initiate proceedings to convert his commitment from criminal to civil, in accordance with CP section 3–106.

**IN APPEAL NO. 352, ORDER DENYING APPELLANT ADAMS' MOTION TO DISMISS THE INDICTMENT IN CASE NO. 03–K–10–0353, CIRCUIT COURT FOR BALTIMORE COUNTY, REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL, AND RELATED PROCEEDINGS IN CIRCUIT COURT, TO BE PAID BY BALTIMORE COUNTY.**

**IN APPEAL NO. 435, ORDER DENYING APPELLANT RAY'S MOTION TO DISMISS THE INDICTMENT IN CASE NO. 12–K–09–1693, CIRCUIT COURT FOR HARFORD COUNTY, REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL, AND RELATED PROCEEDINGS IN CIRCUIT COURT, TO BE PAID BY HARFORD COUNTY.**