*Catherine Ashley Hoggle v. State of Maryland*, No. 237, Sept. Term 2020.  Opinion by Arthur, J.

**CRIMINAL PROCEDURE—INCOMPETENCY TO STAND TRIAL— DISMISSAL OF CHARGES BASED ON PASSAGE OF TIME**

In cases where a defendant is charged with a felony or crime of violence, the court must "dismiss the charge against a defendant found incompetent to stand trial . . . after the . . . expiration of 5 years" after the defendant was found incompetent to stand trial.  Md. Code (2001, 2018 Repl. Vol.), § 3-107(a)(1) of the Criminal Procedure Article.  In cases where a defendant is charged with an offense other than a felony or crime of violence, the court must dismiss the charge against a defendant found incompetent to stand trial "after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged."  *Id.* § 3-107(a)(2).

In this case, the defendant was originally charged in district court with various misdemeanor offenses.  The district court found that the defendant was incompetent to stand trial and committed the defendant to a health care facility.  Three years after the defendant's arrest, the State entered a nolle prosequi as to the district court charges.  At the same time, the State obtained an indictment charging the defendant in circuit court with two counts of first-degree murder.  The circuit court found that the defendant was incompetent to stand trial and ordered that the commitment should continue.

Under these circumstances, the statutory five-year period for dismissal of the murder charges began when the circuit court found that the defendant was incompetent to stand trial on those charges, not when the district court had found the defendant incompetent to stand trial on the earlier charges (which had since been dismissed).

Circuit Court for Montgomery County
Case No. 132401C

CATHERINE ASHLEY HOGGLE

v.

STATE OF MARYLAND

———————————————————

Kehoe,
Arthur,
Leahy,

JJ.

———————————————————

Opinion by Arthur, J.

———————————————————

Filed: September 1, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

When a criminal defendant has been found incompetent to stand trial ("IST"), Maryland Code (2001, 2018 Repl. Vol.), section 3-107(a) of the Criminal Procedure Article ("CP"), dictates how long the State has to restore the defendant to competence before the charges must be dismissed.

In general, if a person has been charged with a felony or a "crime of violence" and has been found IST, a court must dismiss the charges "after the lesser of the expiration of 5 years or the maximum sentence for the most serious offense charged."  CP § 3-107(a)(1).  Similarly, if a person has been charged with a crime other than a felony or a crime of violence and has been found IST, a court, in general, must dismiss the charges "after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged."  CP § 3-107(a)(2).  Finally, regardless of the time periods specified in CP § 3-107(a)(1) and (2), a court, in general, must dismiss the charges if it "considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found" IST.  CP § 3-107(b).

Section 3-107 does not address whether the State may recharge the defendant after a court has dismissed the charges under § 3-107(a)(1) or (a)(2) because of the passage of time.  The Court of Appeals, however, has held that the State may recharge the defendant, but that the IST commitment may continue only if the State rebuts a presumption that the defendant will not regain competence in the foreseeable future (i.e., only if the State rebuts a presumption that the defendant is not "restorable").  *State v. Ray*, 429 Md. 566, 596 (2012).

The statute also fails to address when the three-year or five-year period in § 3-

107(a) begins to run. Looking to the legislative history and the policy underlying the statute, this Court has held that the period begins to run when the defendant is found IST on the charged offenses, not when the defendant is first charged with those offenses. *Kimble v. State*, 242 Md. App. 73, 88 (2019).

The statute also fails to address the issue in this case. Here, the State brought misdemeanor charges; the defendant was found IST on those charges; the State voluntarily dismissed the misdemeanor charges shortly before the court would have been required to dismiss them because of the passage of time; the State simultaneously recharged the defendant with a felony and crime of violence; and the defendant was found IST on the new charges. Under § 3-107(a)(1), the State would generally have five years to restore the defendant to competence. But do the five years run from the date when the defendant was found to be IST on the misdemeanor charges, which the State dismissed? Or do the five years run from the date when the defendant was found to be IST on the new charges of a felony or crime of violence?

In this case, the Circuit Court for Montgomery County concluded that the five years ran from the date when the defendant was found IST on the felony or crime of violence charges. Extrapolating from the statute and the cases interpreting it, we agree. Consequently, we shall affirm the judgment of the circuit court.

Our decision does not, however, relieve the court of its obligation to inquire into whether the defendant is unlikely to become competent in the foreseeable future and must be civilly committed to an inpatient facility designated by the Department of Health. *See* CP § 3-106(e)(1).

2

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Initial Charges Against Hoggle in District Court

Catherine Hoggle is the mother of Sarah Hoggle and Jacob Hoggle.  According to the State, the two children were last seen in the care of their mother on September 7, 2014.  At that time, Sarah was five years old, and Jacob was three years old.

Hoggle was arrested three days after the children disappeared.  Officers interrogated her for several hours, but they did not learn the location of the children.

Within one week of the arrest, the State filed a series of charging documents against Hoggle in the District Court of Maryland for Montgomery County.  First, the State charged her with two counts of neglect of a minor.  Next, the State charged her with one count of obstruction of justice.  Finally, the State charged her with two counts of abduction or unlawful detention of a child by a relative.

An evaluator from the Health Department examined Hoggle, who had a history of schizophrenia.  The evaluator concluded that Hoggle was incompetent to stand trial at that time.

On January 10, 2015, the district court found that Hoggle was incompetent to stand trial and ordered that she be committed at Clifton T. Perkins Hospital.  As required by statute, the district court periodically reviewed the issue of Hoggle's competency.  On nine occasions from the date of commitment until September 2017, the district court found that Hoggle remained incompetent and that she continued to meet the criteria for commitment.

At a separate proceeding in March 2016, about 18 months after the initiation of the

misdemeanor case in the district court, a prosecutor informed the court that the State

planned to charge Hoggle with the murders of her two children. The prosecutor said that

the State had decided to delay the indictment so that the grand jury might be available, if

needed, to investigate the disappearance of the two children. According to the

prosecutor, once the State obtained an indictment, the State would no longer be able to

use the grand jury as an investigative entity.

### B.   <u>Murder Charges in Circuit Court</u>

On September 14, 2017, the State dismissed all charges against Hoggle in district

court by entering a nolle prosequi.[1]  On the same day, the State obtained an indictment

charging her in the Circuit Court for Montgomery County with first-degree murder of

Sarah Hoggle and first-degree murder of Jacob Hoggle.

The circuit court issued an arrest warrant in connection with the indictment.

Hoggle was transferred from Clifton T. Perkins Hospital to the Montgomery County

Detention Center for processing. Two days later, the circuit court ordered that Hoggle be

held without bond and committed temporarily to the Department of Health for an

inpatient evaluation of her competency to stand trial.

Danielle R. Robinson, M.D., submitted a competency evaluation report on behalf

---

[1] Maryland Rule 4-247(a) authorizes the State to "terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court." The State dismissed the misdemeanor charges almost exactly three years after they were filed. Although the issue was not settled at the time, we know now that § 3-107(a)(2) would not have required the court to dismiss the misdemeanor charges until January 10, 2018, three years after Hoggle was found IST on those charges. *Kimble v. State*, 242 Md. 73, 88 (2019).

4

of the Department. Dr. Robinson reported that Hoggle's diagnosis of schizophrenia had not changed since prior evaluations in connection with the district court charges. Although Hoggle was taking antipsychotic medications in compliance with her treatment regimen, Dr. Robinson stated that she "continue[d] to demonstrate prominent negative symptoms of Schizophrenia," including "paranoi[a]" and "impoverished and tangential thinking." Although Hoggle "underst[ood] the nature and object of the proceedings against her," Dr. Robinson concluded that she was "unable to assist in her own defense" and therefore that she was incompetent to stand trial. "In light of the allegations against her and chronic psychotic symptoms," Dr. Robinson added that Hoggle was "dangerous and in need of continued inpatient hospitalization."

On December 1, 2017, the circuit court found that Hoggle was incompetent to stand trial on the murder charges against her. The court further found that Hoggle, by reason of a mental disorder, was a danger to herself or to others. Based on those findings, the court committed her to the Department of Health.

Dr. Robinson submitted five competency evaluation reports between December 2017 and August 2019. In each report, Dr. Robinson opined that Hoggle remained incompetent to stand trial, that she remained dangerous because of a mental disorder, and that there was a significant possibility that she might become competent to stand trial in the foreseeable future as the treatment team continued to adjust her medication regimen. Adopting those conclusions, the circuit court ordered the continuation of Hoggle's commitment.

In early 2019, the State moved for an order authorizing an evaluation of Hoggle by

5

a psychiatrist of the State's choosing. The State selected Christiana Tellefsen, M.D., to undertake the evaluation. The circuit court granted the motion over opposition from the defense.

In a report dated August 6, 2019, Dr. Tellefsen concluded that Hoggle remained incompetent to stand trial and that she remained dangerous because of a mental disorder. Dr. Tellefsen declined to give an opinion at that time on the possibility that Hoggle might be restored to competency. Dr. Tellefsen noted that Hoggle had recently started a trial of Clozapine, "an antipsychotic medication that is generally considered to be a 'last resort'" because of its "wide variety of potentially severe side effects." Dr. Tellefsen also noted that Hoggle had shown "modest improvement" in the early stages of the medication trial and that the results should be known within a few months.

### C. Motion to Dismiss Under § 3-107 of the Criminal Procedure Article

On January 10, 2020, five years to the day after she had been found IST on the misdemeanor charges in district court, Hoggle moved for dismissal of the murder charges under CP § 3-107.

As previously stated, § 3-107(a)(1) generally requires the court to "dismiss the charge against a defendant found incompetent to stand trial . . . when charged with a felony or crime of violence . . . after the lesser of the expiration of 5 years or the maximum sentence for the most serious offense charged[.]" When a defendant is charged with an offense other than a felony or crime of violence, the statute generally requires the court to dismiss the charge "after the lesser of the expiration of 3 years or the maximum

6

sentence for the most serious offense charged." CP § 3-107(a)(2).[2]

Hoggle argued that, under the statute, the five-year period for dismissal of the murder charges began on January 10, 2015, the date on which the district court first found her incompetent to stand trial on the misdemeanor charges in the previous case. The defense observed that exactly five years had passed since that date. The defense concluded, therefore, that the statute required the circuit court to dismiss the murder charges.

Opposing the motion, the State countered that, although the district court found Hoggle incompetent to stand trial for misdemeanor charges on January 10, 2015, those charges terminated with the entry of a nolle prosequi. The State observed that the circuit court initially found Hoggle incompetent to stand trial for the first-degree murder charges on December 1, 2017. The State contended that, under the statute, the five-year period for dismissal of those charges did not begin until that later date.

On February 14, 2020, a few days before the hearing on the motion to dismiss, Dr. Robinson issued a new report on Hoggle's competency. According to the report, the treatment team had decided to discontinue the latest medication trial because of its ineffectiveness and its side effects. Dr. Robinson noted that, during her commitment, Hoggle had been treated with "six [antipsychotic] drugs, alone and in combination, . . . at the maximum dose she was able to tolerate for an adequate period of time" to assess the

---

[2] Murder in the first degree is a felony with a maximum sentence of imprisonment for life without the possibility of parole. Md. Code (2002, 2012 Repl. Vol.), § 2-201(b)(1) of the Criminal Law Article ("CL"). Murder is also defined as a "crime of violence" under CL § 14-101(a)(7).

effect.  For the first time, Dr. Robinson opined that there was no longer a substantial likelihood that Hoggle would become competent in the foreseeable future.

### D.    Denial of the Motion to Dismiss

On February 18, 2020, the parties appeared for a hearing to address the status of the commitment and to present arguments on Hoggle's motion to dismiss.  One week later, the court issued an opinion and order denying the motion.

In its opinion, the circuit court observed that CP § 3-107 prescribes different time periods for dismissal of a felony charge and dismissal of a misdemeanor charge.  The court reasoned that, under the statute, the misdemeanor charges brought in the district court in 2014 were "separate and distinct" from the felony charges brought in the circuit court in 2017.  The court concluded that the five-year period for dismissal of the murder charges did not begin until December 1, 2017, when the circuit court found that Hoggle was incompetent to stand trial on those charges.  The circuit court rejected the argument that it should "tack on" the additional time that had elapsed since the earlier finding of incompetency by the district court.  "Accordingly," the court said, "this case is not ripe for dismissal until December 1, 2022 . . . , at the earliest."  Overall, the court "view[ed] this matter as nothing more than successive but permissible prosecutions."[3]

After declining to dismiss the charges, the circuit court addressed whether Hoggle

---

[3] In the alternative, Hoggle had asked the court to dismiss the murder charges on the ground that "resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial[.]"  CP § 3-107(b). The circuit court declined to dismiss the charges under CP § 3-107(b).  Hoggle does not challenge that decision in this appeal.

8

met the criteria for continued commitment. The court found, based on the latest competency evaluations, that Hoggle remained incompetent to stand trial and that she remained dangerous because of a mental disorder. The court announced that it would schedule a separate evidentiary hearing to decide the remaining issue of whether Hoggle could be restored to competency in the foreseeable future. The court explained that it preferred to receive testimony from Dr. Robinson and other witnesses before deciding that issue.

The circuit court entered the order denying the motion to dismiss on February 27, 2020. Hoggle noted a timely appeal from that order.[4]

Although the court had planned to hold an evidentiary hearing to assess the possibility that Hoggle might be restored to competency, the hearing never took place. The court postponed the hearing from its originally scheduled date because of courthouse closures in response to the COVID-19 pandemic. Later, with the consent of the parties, the court stayed its proceedings pending the outcome of this appeal.

## DISCUSSION

In this appeal, Hoggle contends that the circuit court erred when it denied her motion to dismiss the indictment under CP § 3-107. Hoggle asks this Court to reverse the order denying her motion and to direct the circuit court to dismiss the indictment.

In her appellate brief, Hoggle asks the following questions:

---

[4] Under the collateral order doctrine, a defendant may take an immediate appeal from an order denying a motion for dismissal of criminal charges based on CP § 3-107. *Adams v. State*, 204 Md. App. 418, 431-33, *vacated on other grounds*, *State v. Ray*, 429 Md. 566 (2012).

9

1.	Did the Circuit Court err in failing to dismiss murder charges against Appellant after the expiration of five (5) years after she was determined to be incompetent to stand trial?

2.	Did the Circuit Court err in failing to follow the mandatory language of Md. Code, Criminal Procedure, Section 3-107?

3.	Did the Circuit Court err in denying Appellant's motion to dismiss when the State admitted that it considered all charges the same case, never intended to try any charges in other than the Circuit Court, and manipulated charging procedures for its own tactical gain, resulting in [incompetent-to-stand-trial] detention for a period of time exceeding those set forth in Md. Code, Criminal Procedure, Section 3-107?

Where, as here, the decision on a motion to dismiss an indictment requires the interpretation and application of a statute, we make an independent determination of whether the trial court's conclusions were legally correct. *Kimble v. State*, 242 Md. App. 73, 78 (2019) (quoting *Schisler v. State*, 394 Md. 519, 535 (2006)). This analysis begins with an examination of the statutory language in the context in which it appears. *See, e.g.*, *State v. Ray*, 429 Md. 566, 576 (2012).

Title 3 of the Criminal Procedure Article governs the issue of incompetency to stand trial in criminal cases. A defendant is incompetent to stand trial if the defendant is "not able: (1) to understand the nature or object of the proceeding; or (2) to assist in [his, her, or their] defense." CP § 3-101(f). Where a defendant alleges incompetence or appears to be incompetent, the court must "determine, on evidence presented on the record, whether the defendant is incompetent to stand trial." CP § 3-104(a). The court may order the Health Department to examine the defendant and to make a report of its findings. CP § 3-105.

The case may proceed toward trial if the court finds that the defendant is

10

competent to stand trial. CP § 3-104(b). If, however, the court finds that the defendant is incompetent, then the court must evaluate whether the defendant would pose a danger, by reason of a mental disorder, to the defendant's self or to the person or property of others upon release. *See* CP § 3-106(b)-(c). If the court finds that the defendant is incompetent and not dangerous, then the court may set bail or authorize the release of the defendant. CP § 3-106(b). If the court finds that the defendant is incompetent and dangerous, then the court must order that the defendant be committed to a health care facility. CP § 3-106(c)(1)(i).

The commitment of a defendant found incompetent to stand trial may continue until the court finds that: (1) the defendant is no longer incompetent; (2) the defendant is no longer dangerous; or (3) there is no substantial likelihood that the defendant will become competent in the foreseeable future. CP § 3-106(c)(1)(i). "The term 'restorable' is a shorthand for describing situations when there is a 'a [*sic*] substantial likelihood that the defendant will become competent to stand trial in the foreseeable future.'" *State v. Ray*, 429 Md. at 570 n.2 (quoting CP § 3-106(b)(1)(iii)). Ordinarily, the court must order a civil commitment or an alternative to civil commitment if the court determines that the defendant is not restorable. CP § 3-106(e)(1).

Once a defendant is committed based on a finding of incompetency to stand trial, the court must conduct periodic reviews to determine whether the defendant continues to meet the criteria for commitment. The Department of Health must report to the court every six months from the date of the commitment and whenever the Department determines that the defendant is no longer incompetent, no longer dangerous because of a

11

mental disorder, or no longer restorable. CP § 3-108(a)(i)-(ii). The court must hold a hearing to determine whether the defendant meets the criteria for continued commitment every year from the date of commitment and when the court receives new information from the Department, the State, or defense counsel relevant to the court's determination. CP § 3-108(d)(1).

The present appeal concerns CP § 3-107(a), which requires the court to dismiss charges against an incompetent defendant after designated time periods. It provides:

> (a) Whether or not the defendant is confined and unless the State petitions the court for extraordinary cause to extend the time, the court shall dismiss the charge against a defendant found incompetent to stand trial under this subtitle:
>
>> (1) when charged with a felony or a crime of violence as defined under § 14-101 of the Criminal Law Article, after the lesser of the expiration of 5 years or the maximum sentence for the most serious offense charged; or
>>
>> (2) when charged with an offense not covered under item (1) of this subsection, after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged.

CP § 3-107(a).

A separate subsection of § 3-107 authorizes the trial court to dismiss charges against an incompetent defendant in the interests of justice. It provides: "Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial, the court shall dismiss the charge without prejudice." CP § 3-107(b).

The Court of Appeals analyzed the history of section 3-107 in *Ray v. State*, 410

Md. 384 (2009). There, the Court explained that, before 1967, Maryland had no statute permitting or requiring the dismissal of charges against defendants who could not be restored to competency. *Id.* at 407. Once a court found that a defendant was incompetent to stand trial, the defendant would be confined in a mental institution until the defendant "recovered," at which point the case could proceed. *Id.* In 1967, the General Assembly enacted legislation permitting a trial court to dismiss charges against an incompetent defendant "but only after 10 years had elapsed since the finding of incompetency in a capital case and 5 years had elapsed in all other cases punishable by imprisonment." *Id.* at 408. Under that legislation, the dismissal of charges was discretionary after the requisite time period. *Id.* at 409. Eventually this provision was codified at section 3-107 of the Criminal Procedure Article. *Id.* at 410.

In 2006, the General Assembly made comprehensive revisions to this statutory framework. *Ray v. State*, 410 Md. at 416. The "impetus" for this legislation was a lawsuit brought by the Maryland Disability Law Center on behalf of persons confined at State facilities after being adjudged incompetent to stand trial. *Id.* at 410-11. In their lawsuit, they claimed that the State had violated their due process rights by committing them indefinitely based on a determination of incompetency. *Id.* at 410. In response to that lawsuit, government officials worked with public-interest advocacy groups to propose amendments to the IST commitment statute. *Id.* at 411-12. Proponents of the amendments argued that revisions were necessary because "it violates the equal protection and due process clauses of the Fourteenth Amendment for a State to hold an individual adjudged incompetent indefinitely." *Id.* at 413 (discussing *Jackson v. Indiana*,

13

406 U.S. 715 (1972)).

In *Jackson v. Indiana*, 406 U.S. at 738, the Supreme Court held that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Accordingly, "a person charged by a State with a criminal offense who is committed solely on account of [the person's] incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that [the person] will attain that capacity in the foreseeable future." *Id.* The "continued commitment" of a defendant deemed incompetent to stand trial "must be justified by progress toward that goal." *Id.* If there is no substantial probability of restoring the defendant's competency, the State must either release the defendant or institute civil commitment proceedings under the standards applicable to persons not charged with a crime. *Id.*[5]

In an effort to comply with *Jackson v. Indiana*, the 2006 General Assembly enacted legislation that "required, rather than permitted, a court to dismiss charges after the expiration of certain time[ ]periods[.]" *Ray v. State*, 410 Md. at 415-16. The statute established different time limits depending on the seriousness of the charged offense. *Id.* at 416. For a defendant charged with a capital offense, the statute required dismissal after

---

[5] According to the Court of Appeals, "if there is no substantial probability that the IST commitment will result in the defendant's gaining competence in the foreseeable future, the purpose of the commitment is no longer making the defendant competent but rather punishing him for a crime of which he has not been convicted or protecting public safety without going through the civil commitment process." *State v. Ray*, 429 Md. 566, 586-87 (2012) (footnotes omitted).

the expiration of 10 years.  *Id.*[6]  For a defendant charged with a felony or crime of violence, it required dismissal after the lesser of the expiration of five years or the maximum sentence for the most serious offense charged.  *Id.*  For a defendant charged with any other offense, it required dismissal after the lesser of the expiration of three years or the maximum sentence for the most serious offense charged.  *Id.*

The defendant in *Ray v. State*, 410 Md. at 388-89, moved to dismiss a charge of attempted first-degree murder and other charges once five years elapsed after the circuit court had found him incompetent to stand trial.  The court denied Ray's motion, purporting to find "extraordinary cause" to extend the five-year period because the court found that Ray remained dangerous and that there was still a significant possibility that he could be restored to competency.  *Id.* at 402-04.  The Court of Appeals reversed, concluding that "extraordinary cause must require more than dangerousness and restorability[.]"  *Id.* at 419.  The Court directed the circuit court to dismiss the charges, but "recognize[d] that under the statute the State m[ight] re-institute charges and that civil commitment proceedings m[ight] be initiated against Ray."  *Id.* at 420.

Shortly after the Court of Appeals issued its opinion, the State obtained a second indictment charging Ray with the same offenses as those in the first indictment.  *Adams v. State*, 204 Md. App. 418, 428, *vacated*, *State v. Ray*, 429 Md. 566 (2012).[7]  The original charges were dismissed to comply with the Court of Appeals' decision, and the

---

[6] The General Assembly removed the subsection related to the dismissal of capital offenses when it repealed the death penalty.  2013 Md. Laws ch. 156, § 3.

[7] *Adams v. State*, 204 Md. App. 418 (2012), is a consolidated opinion that addresses Ray's appeal and an appeal by Adams, a similarly situated defendant.

15

State continued to confine Ray in connection with the second indictment. *Id.* Ray moved to dismiss the second indictment, and the circuit court denied his motion. *Id.*

In his ensuing appeal, Ray argued that the State "impermissibly circumvent[ed]" the statute when it recharged him in a second indictment upon dismissal of the first. *Adams v. State*, 204 Md. App. at 434. Ray argued "that 'the State cannot indefinitely confine a criminal defendant found incompetent to stand trial and who is not likely to regain competency in the foreseeable future, . . . by simply re-indicting the defendant on the same charges that are required to be dismissed pursuant to § 3-107.'" *Id.*

This Court found Ray's arguments persuasive. The Court said that the "dismissal deadlines in section 3-107(a) provide yardsticks for measuring 'the reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain [competency] in the foreseeable future.'" *Adams v. State*, 204 Md. App. at 435-36 (quoting *Jackson v. Indiana*, 406 U.S. at 738). "In the case of felony indictments," the Court said, "the five-year period in section 3-107(a)(2) reflects the General Assembly's assessment that, except in 'extraordinary' cases, [five years] is sufficient time for the court to make the probable competency determination[.]" *Adams v. State*, 204 Md. App. at 436. The Court reasoned that permitting re-indictment after the mandated dismissal "would effectively eviscerate the statutory five-year deadline . . . , by . . . allow[ing] prosecutors, by serial indictments, to maintain incompetent defendants under [IST] commitments." *Id.* at 437-38. The *Adams* Court concluded that the statute required the circuit court to dismiss the second indictment and prohibited the State from re-indicting Ray unless prosecutors had a good faith belief that he had regained his

16

competency to stand trial.  *Id.* at 439.

The Court of Appeals set aside this Court's ruling in *Adams*, holding that the State "may re-indict a defendant after a CP § 3-107 dismissal without establishing [the defendant's] competency."  *State v. Ray*, 429 Md. at 570.  The Court observed that §3-107(b) "expressly provides that a dismissal of charges is without prejudice."  *Id.*  The Court found no indication that the 2006 General Assembly had intended to prohibit the State from re-indicting a defendant after a dismissal under § 3-107.  *Id.* at 589-90.  The Court concluded that the General Assembly sought to put an end to indefinite commitments "by requiring periodic judicial reviews of restorability and prohibiting IST commitments of unrestorable defendants" (*id.* at 577), "not by limiting the State's ability to re-indict."  *Id.* at 590.

The Court rejected Ray's argument that the dismissal deadlines act as "an almost absolute upper bound on the power of the State to hold a pre-trial detainee under the status of incompetent to stand trial[.]'"  *Id.* at 577.  The Court disagreed with the argument (which the *Adams* Court had endorsed) that the statutory dismissal periods would be "meaningless" if the State could refile charges after a mandatory dismissal.  *Id.* at 590-91.  The Court explained: "By mandating dismissals upon the expiration of ten, five, and three years[,] . . . the General Assembly created the upper limit on how long the State may attempt to work toward the goal of making an incompetent defendant become competent, *at least with respect to that indictment*."  *Id.* at 594-95 (emphasis added).  The Court continued:

> That the dismissal deadlines are statutory cutoffs for restorability

17

determinations does not mean that the State may not re-indict such an individual unless he has been restored to competency. What these dismissal deadlines are is the General Assembly's way of saying that—if a defendant, charged with a particular crime and placed in IST commitment, does not become competent within ten, five, or three years depending on the severity of the crime—there is no substantial probability that the defendant will become competent in the foreseeable future. In other words, the passage of time in IST treatment—without the defendant's gaining competency—and the resulting dismissal under CP § 3-107 create the presumption that the defendant is not restorable.

*Id*. at 595.

The Court concluded that, when the State re-indicts a defendant upon the dismissal of charges under CP § 3-107, the statute creates a rebuttable presumption that the defendant is unrestorable. *State v. Ray*, 429 Md. at 596. In other words, "[o]nce these statutorily prescribed time periods expire and charges are dismissed, there is a presumption that the time necessary for determining whether [a defendant] is restorable has passed." *Id.* at 570. In Ray's case, the circuit court had made no finding as to whether he might be restored to competency. *Id.* The Court concluded that "the error below was not that the circuit court allowed the State to re-indict Ray after a CP § 3-107 dismissal, but that it placed him in IST commitment, when there was a presumption that he was unrestorable." *Id.* The Court directed the circuit court to "make the required restorability determination" on remand. *Id.* at 597.

Although the sequence of events here is not identical to the sequence in Ray's case, Hoggle's case, like Ray's, involves an IST commitment under a second set of charges after the dismissal of an earlier set of charges. On appeal, Hoggle notes that a "re-indictment" does not "reset[] the clock for constitutionally permissible IST

18

commitments." *State v. Ray*, 429 Md. at 570. She argues that the circuit court erred "when it found that the clock re-started" when the State withdrew the district court charges and filed new charges in the circuit court. Her argument is misdirected. In *State v. Ray*, the "clock" used to assess the constitutionality of Ray's continued commitment was not the same "clock" used to determine whether the new charges must be dismissed under CP § 3-107. Under the *Ray* Court's analysis, the constitutional "clock" was not reset upon the re-indictment, but the statutory "clock" undoubtedly was. Had the statutory clock not been reset upon the reindictment, the dismissal of the new charges would have been required.

On appeal here, Hoggle focuses much of her argument on *Kimble v. State*, 242 Md. App. 73 (2019), in which this Court considered the starting point for measuring the mandatory dismissal periods under § 3-107(a)(1) and (2). The defendant in that case, Kimble, was found incompetent to stand trial nearly two years after being charged with sexual abuse of a minor and related offenses. *Id.* at 74-75. When Kimble moved for dismissal under CP § 3-107(a), five years had passed since the date of the original charges, but only three years had passed since the date when the court found him to be incompetent. *Id.* at 77. This Court held that the five-year period for dismissal of charges began on the date when the circuit court found Kimble incompetent to stand trial, not on the date when the charges were originally filed. *Id.*

As the *Kimble* Court observed, the statute itself is silent as to when the five-year period for dismissal of felony charges should begin. *Kimble v. State*, 242 Md. App. at 81. Earlier versions of the statute expressly stated that, in non-capital cases, the court could

19

not dismiss a charge until five years "after the defendant was found incompetent to stand trial." *Id.* at 81-84 & nn.4-6. After the 2006 amendments, the "time periods remained," but the statute "no longer defined the event beginning the time periods" and "made dismissal after expiration of those periods mandatory, rather than discretionary." *Id.* at 84. The Court perceived "no intention by the legislature to change when the time periods begin to run." *Id.* at 86. The Court explained that "[i]t makes sense . . . to begin the time period once competency becomes an issue in the case, not before." *Id.* at 88.

Hoggle asserts that *Kimble* resolved "[a]ll ambiguity regarding the 'starting of the clock'" for the five-year period for dismissal of the murder charges against her. Hoggle argues that *Kimble* establishes that "[t]he 'clock' starts upon the first IST finding."[8]

*Kimble* does not address the situation at issue here, because *Kimble* concerned a single set of charges, but Hoggle now faces the second of two sets of charges. The State originally charged Hoggle with various misdemeanor offenses in September 2014. In those cases, the district court found Hoggle incompetent to stand trial on January 10, 2015. The State dismissed those charges by entering a nolle prosequi on September 14, 2017. On the same day, the State obtained the circuit court indictment charging Hoggle

---

[8] It is not exactly correct for Hoggle to say that she has been continuously confined under an IST commitment since January 10, 2015. Hoggle's first IST commitment ended with the dismissal of district court charges on September 14, 2017. For two days, Hoggle reverted to the status of an ordinary defendant detained before trial under a criminal indictment. During the two-and-a-half months thereafter, the circuit court committed Hoggle for the purpose of an inpatient evaluation of her competency. Hoggle's second period of IST commitment did not begin until December 1, 2017, when the circuit court determined that she was incompetent to stand trial. The circuit court made its own independent assessment of Hoggle's competency; it was not bound by the district court's prior findings.

with two counts of first-degree murder. The circuit court did not make an initial determination that Hoggle was incompetent to stand trial until December 1, 2017.

Under *Kimble*, therefore, there are at least two possible dates for measuring the five-year period for dismissal of the murder charges: January 10, 2015, when the district court found Hoggle incompetent to stand trial on misdemeanor charges; or December 1, 2017, when the circuit court found Hoggle incompetent to stand trial on the murder charges. It is not at all obvious why the five-year period for dismissing the murder charges should start nearly three years before the State even filed those charges.

Hoggle encourages this Court to evaluate this case as if the State had charged her with first-degree murder at the time of her arrest in September 2014. Hoggle contends that the State could have brought the murder indictment earlier than it did. She points out that, at a proceeding in March 2016, a prosecutor acknowledged that the State intended to seek an indictment for murder, but had decided to delay the indictment so that it might keep the grand jury available if needed to investigate the disappearance of the two children. Based on this statement, Hoggle argues that, "from the time of [her] arrest in September 2014, all charges were the same case[.]"

The prosecutor's comment from the March 2016 proceeding does not support Hoggle's conclusion that the State decided to charge Hoggle with murder at the time of the arrest in 2014, just one week after the children disappeared. In any event, we fail to see how CP § 3-107 requires the court to look beyond the formal charging documents to examine the prosecutors' subjective motives for their discretionary charging decisions. CP § 3-107 defines the dismissal period with reference to a "charge," not in relation to a

21

single incident or transaction or investigation of a defendant. *See also Ray v. State*, 429 Md. at 594-95 (stating that the time periods in § 3-107(a) represent "the upper limit on how long the State may attempt to work toward the goal of making an incompetent defendant become competent, at least with respect to that indictment").

Furthermore, under *Ray*, if the State had not voluntarily dismissed the misdemeanor charges against Hoggle, but had waited for the court to dismiss them under § 3-107(a)(2), the State could have immediately indicted her for murder and moved to have her confined under an IST commitment. The court could have continued the IST commitment only if the State rebutted a presumption that Hoggle was unrestorable, but the State would almost certainly have succeeded in doing so, as the court consistently found her to be restorable at every one of the numerous periodic reviews before February 2020. Consequently, had the State allowed the court to dismiss the misdemeanor charges in 2017 and immediately charged Hoggle with murder, § 3-107(a)(1) would not have required the court to dismiss the new charges until five years from the date when Hoggle was found to be IST on the murder charges. It is unclear why the result should be any different here, where the State voluntarily dismissed the misdemeanor charges instead of waiting for the court to dismiss them.

As the circuit court noted, CP § 3-107 sets forth different dismissal periods depending on the type of charge and the maximum penalties. The State argues that, "because the length of the time period at issue depends on the nature of the charges[,] . . . it would be unworkable for the time period to begin at a point in time before the charges at issue are ever filed[.]" The State contends that "the five-year deadline to dismiss a

felony or crime of violence charge cannot begin running until the defendant is charged with, and found incompetent to stand trial for, that felony or crime of violence." Under the State's theory, the five-year period in the present case "runs from the date that the circuit court found Hoggle incompetent to stand trial on the charges that were pending against her," not from the date when "she was found incompetent to stand trial on different charges, in different cases, in a different court."

Under Hoggle's theory, on the other hand, the period for mandatory dismissal for all charges begins with the earliest finding of incompetency, even if the initial charges are dismissed and the State brings new charges. This theory is in tension with *State v. Ray*. There, the State had dismissed the first indictment and brought the exact same charges in a second indictment. *State v. Ray*, 429 Md. at 573 & n.6. Dismissal of the second indictment would have been required if the Court had measured the five-year period from the incompetency finding associated with the earlier, dismissed indictment. Yet even though more than five years had passed since the first finding of incompetency, the Court of Appeals did not require dismissal of the second indictment. *Id.* at 596-97. We agree with the State that "it necessarily follows" from the *Ray* Court's analysis that the statutory period begins running "from the finding of incompetency under the charging document that the defendant is currently facing, and not from a finding of incompetency under a prior charging document" that has since been dismissed.

Arguing for a contrary conclusion, Hoggle argues that, by failing to measure the five-year period for dismissal of the murder charges from the earliest finding of incompetency, the circuit court "functionally ignore[d] . . . the factual reality of this case"

23

and "effectively destroy[ed] Section 3-107."  Hoggle asserts that the circuit court's interpretation would permit the State to increase the length of an IST commitment simply by filing new charges every few years, resulting in an indefinite detention in violation of due process.  Hoggle encourages this Court to "establish a bright line rule" that will prevent prosecutors from "circumvent[ing]" the statute through successive charges.

Hoggle's arguments resemble the arguments that the Court of Appeals rejected in *State v. Ray*.  There, Ray had argued that "the State should not be allowed to circumvent" the statutory limit on the length of an IST commitment "by re-instituting the charges against an incompetent defendant."  *State v. Ray*, 429 Md. at 577.  In the Court of Appeals' view, this argument incorrectly "treat[ed] re-indictment and commitment as the same[.]"  *Id.* at 578.  The Court held that, when the State re-indicted Ray after the dismissal of the first indictment against him, Ray was not entitled to a dismissal of the second indictment.  *Id.* at 597.  The argument for dismissal in Hoggle's case is no stronger than it was in *State v. Ray*.  Even though five years have passed since the incompetency finding associated with an earlier set of charges, those charges have already been dismissed and replaced with a new set of charges.

Although Hoggle is not yet entitled to a dismissal of the current indictment under § 3-107(a)(1), the permissibility of her continued commitment is still in question.  In February 2020, the court received a report from the Department of Health in which Dr. Robinson opined that there was no longer any substantial likelihood that Hoggle will become competent in the foreseeable future.  The circuit court found that Hoggle remained incompetent to stand trial and dangerous, but the court has not yet determined

whether Hoggle is restorable. When the court considers those issues, it should not ignore the reality that the Department has been working toward the goal of making Hoggle competent to stand trial almost continuously since January 10, 2015. Nor should the court ignore the legislative judgment, embodied in § 3-107(a), that five years is ordinarily the reasonable period of time necessary to determine whether a defendant is restorable. *See State v. Ray*, 429 Md. at 595.

**CONCLUSION**

For the reasons explained above, we conclude that the circuit court did not err when it denied Hoggle's motion to dismiss the indictment under CP § 3-107(a). The circuit court correctly concluded that the five-year period for dismissal of the murder charges began on December 1, 2017, when the circuit court found her incompetent to stand trial on those charges. We affirm the order denying the motion to dismiss.

When this case returns to the circuit court, the court must complete its evaluation of whether Hoggle continues to meet the criteria for commitment. Specifically, the court must address the issue of restorability, left unresolved by the order under review. If the court determines that Hoggle is no longer restorable, the court should proceed in accordance with CP § 3-106(e).

**ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**